**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-0214-WJM-KLM

MARY QUINTANA,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
JUSTIN DODGE, in his individual capacity,
RICHARD EBERHARTER, in his individual capacity,

      Defendants.

---

**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION**

---

This civil rights action arises out of an armed standoff between Plaintiff Mary

Quintana's son and Denver Police Department ("DPD") officers, which resulted in two

officers being shot and Plaintiff's house being destroyed by fire.   (ECF No. 91.)

Plaintiff sues the City and County of Denver ("Denver"), as well as DPD officers Justin

Dodge and Richard Eberharter in their individual capacities (jointly, the "Individual

Defendants") for negligence and constitutional violations under 42 U.S.C. § 1983.   (*Id.*)

This matter is before the Court on Defendants' Motion for Summary Judgment

("Defendants' Motion") (ECF No. 107) and Plaintiff's Motion for Partial Summary

Judgment ("Plaintiff's Motion) (ECF No. 108).   For the reasons explained below,

Defendants' Motion is granted in part and denied in part and Plaintiff's Motion is denied.

# I. BACKGROUND[1]

The Court presumes the parties' familiarity with the facts and repeats only those

necessary to rule on the motions for summary judgment.

Defense Technologies, the manufacturer of the 2-chlorobenzylidene

malononitrile ("CS") cannisters used by the Individual Defendants warns against their

use indoors due to risk of fire.   (ECF No. 108 at 2, 5; ECF No. 109 at 2 n.2.)

According to Defendants, police departments "throughout the region" use "burn boxes"

to reduce the risk of fire when using CS cannisters within a building, as they are

designed for outdoor use.   (ECF No. 107-4 ¶ 4.)   The burn boxes used in Plaintiff's

house were described by fire investigators, who were unfamiliar with them prior to the

fire at Plaintiff's house, as "metal ammunition can[s] with numerous ventilation holes

(approximately ½"–1" diameter) drilled through the walls of the container."   (ECF

No.110-2 at 3.)   The Individual Defendants were aware that CS cannisters could cause

a fire if used indoors.   (ECF No. 108 at 3.)   Eberharter, at Dodge's direction, threw the

CS cannister (inside a burn box) that caused the fire into Plaintiff's house without

looking to see where it landed.   (*Id.* at 4).

Defense Technologies sent information—including the warning against indoor

use—about the CS cannisters to Denver, and Denver received those materials.[2]   (*See*

---

[1] The following factual summary is based on the parties' briefs on the motions for summary judgment and documents submitted in support thereof.   These facts are undisputed unless attributed to a party or source.   All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] Defendants quibble that Plaintiff attaches manufacturer materials related to a different model cannister than the ones used by the Individual Defendants.   (ECF No. 112 at 5.)   They admit, however, that the "product information [for the correct cannister model] contains the same statement[s]."   (*Id.*)

ECF No. 110-8.)   These materials do not contain any exceptions permitting use indoors if certain precautions are taken.   (*Id.*)   Dodge states that he was "trained on how to properly use chemical munitions in barricade settings," and his "plan directives, and actions . . . were consistent with that training."   (ECF No. 107-1 ¶¶ 58–59.)   Despite this, Denver was unable to locate during discovery any "documents, communications, training materials, training curricula, operations manuals, department policies, or department handbooks that describe how DPD officers are required to deploy fire-producing and non-flammable chemical munitions inside of homes." (ECF No. 110-1 at 4–5.)

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).   A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.   *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).   An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.   *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).   In addition, the

Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III. ANALYSIS

#### A.      Defendants' Motion

Defendants move for summary judgment on all claims.   (ECF No. 107 at 2.)

##### 1.      The Individual Defendants

The Individual Defendants argue they are entitled to summary judgment because "the Colorado Governmental Immunity Act[, Colo. Rev. Stat. § 24-10-118 ("CGIA"),] precludes liability under the[] facts."   (*Id.*at 10.)   As the Court has previously noted (*see* ECF No. 75 at 8), "[a] public employee is immune from liability on tort claims arising out of an act or omission of the employee during the performance of his or her duties and within the scope of his or her employment, unless the act or omission causing such injury was willful and wanton." *Carothers v. Archuleta Cnty. Sheriff*, 159 P.3d 647, 650 (Colo. App. 2006) (citing Colo. Rev. Stat. § 24-10-118).   Colorado courts have adopted the definition of "willful and wanton conduct" from Colorado's exemplary damages statute, which defines it as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or the rights and safety of others, particularly the plaintiff."   Colo. Rev. Stat. § 13-21-102(1)(b); *Drake v. City & Cnty. of Denver*, 953 F. Supp. 1150, 1160 (D. Colo. 1997); *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994) (en banc).

The Individual Defendants readily admit that whether a defendant acted willfully or wantonly is usually a fact issue reserved for the jury, but they argue summary judgment is appropriate because Plaintiff has offered insufficient evidence to

demonstrate their conduct was willful and wanton.   (ECF No. 107 at 11.)   Plaintiff

argues "[t]he totality of the evidence support[s] that the Individual Defendants were

consciously aware that their acts or omissions created danger . . . [and nevertheless]

acted without regard to the danger."   (ECF No. 110 at 10.)

Specifically, Dodge argues the facts in the record "do not demonstrate that [he]

purposefully directed Officer Eberharter to start a fire in the house, nor that [he]

harbored any ill intent toward Ms. Quintana's house."   (ECF No. 107 at 13.)   He further

argues "the evidence does not demonstrate that [he] acted willfully and wantonly."   (*Id.*)

At most, he argues, the facts show that he was aware of a possible risk of fire, but he

"had never seen a CS cannister start a fire," "acted in accordance with the [Denver

Police] Department's training," and "specifically instructed and ensured that Officer

Eberharter deployed the CS cannisters in a manner that worked to mitigate the risk of

fire."   (*Id.* at 14.)   Eberharter's arguments mirror Dodge's, emphasizing his perception

that the risk of fire was relatively low and the steps he took to avoid starting a fire in

Plaintiff's home.   (*Id.* at 16.)

Plaintiff erroneously suggests the Court's Order (ECF No. 75) addressing

Defendants' motion to dismiss controls application of the CGIA at this later stage of the

litigation.   (ECF No. 110 at 8 n.2.)   Regardless, Plaintiff points to several facts in the

record that in the Court's view raise a genuine issue of material fact on this point,

specifically:

- The manufacturer of the CS cannisters the Individual Defendants

    deployed in Plaintiff's house warns they "should NOT be deployed onto

rooftops, in crawl spaces, or indoors due to [their] fire-producing

capability" (*id.* at 7) (emphasis in original);

- The Individual Defendants were aware of the risk of fire at the time they

  deployed the CS cannisters in Plaintiff's house (*id.* at 5–6); and

- That Eberharter, at Dodge's direction, threw the CS cannister (in the burn

  box) that caused the fire into Plaintiff's house without looking to see where

  it landed[3] (*id.* at 6).

The Individual Defendants counter with facts of their own, including the failure of

negotiation, the gradual escalation of force, the danger Plaintiff's son posed to them and

other officers, and their experience using CS cannisters in burn boxes without causing a

fire.   (ECF No. 107 at 11.)   These facts bolster the Individual Defendants' arguments

that they acted reasonably (or at least not with willful and wanton disregard of Plaintiff's

rights) during a long and tense situation where the lives of officers and Plaintiff's son

hung in the balance.   But the existence of these facts, alongside the facts favoring

Plaintiff highlighted above, argue strongly for this Court to find a dispute of material facts

on this issue, rendering summary judgment inappropriate.

Because the Court finds the evidence in the record creates a material dispute of

fact as to whether the Individual Defendants' conduct was willful and wanton,

---

[3] Defendants argue that there is a very clear and obvious reason why Eberharter threw the burn box into Plaintiff's house without looking: any other course of action would have exposed his head to potential gunfire.   (ECF No. 107 at 23.)   The Court appreciates the danger Eberharter potentially faced if he had put his head through the window to drop the burn box in a controlled manner; however, dropping the burn box in blindly was not the only option, as the Individual Defendants imply.   (*See id.*)   Eberharter could simply have not deployed the fourth CS cannister.   It is up to the jury—not the Court—to weigh the evidence and find whether carrying on with this risky course of action was or was not "heedless," "reckless," and "without regard" to Plaintiff's rights, independent of the rights of her son.   Colo. Rev. Stat.

Defendants' Motion is denied with respect to the Individual Defendants.

> ### 2.      Denver

Denver argues it is entitled to summary judgment because none of Plaintiff's

theories for municipal liability under *Monell v. Department of Social Services*, 436 U.S.

658 (1978), are supported by the facts.   (ECF No. 107 at 16–17.)   Denver specifically

makes the following four arguments:

> (1) there is no underlying constitutional violation to graft
> municipal liability upon; (2) the Officers' behavior did not
> shock the conscience; (3) Plaintiff fails to properly allege and
> support assertions that a City policymaker made a final
> decision that violated constitutional rights; and (4) the City is
> not liable under a failure to train claim.

(*Id.* at 17.)

> #### a.      *Unreasonable Seizure of the House*

Denver's first argument is that, as a matter of law, the seizure effected by the

destruction of Plaintiff's house was not unreasonable under the Fourth Amendment.

(*Id.* at 18.)   Denver's argument is muddled.   It argues that whether a constitutional

violation occurred must be determined by generally assessing the reasonableness of

the Individual Defendants' conduct in light of "the nature and quality of the intrusion on

[Plaintiff's] Fourth Amendment interests against the importance of the governmental

interests alleged to justify the intrusion."   (*Id.* at 19 (quoting *Tennessee v. Garner*, 471

U.S. 1, 9 (1985).)   In a footnote it specifically asserts this approach is more appropriate

than an excessive-force theory, which it submits leads to "awkward" attempts to apply

*Graham v. Connor*, 490 U.S. 386 (1989), to seizures involving property.   (ECF No. 107

---

§ 13-21-102(1)(b).

at 18 n.2.)   Yet, it proceeds to spend about half of this section of its motion arguing the seizure of Plaintiff's *house* was reasonable because the use of force against her *son* was reasonable under the *Graham* factors.   (*Id.* at 20–22.)   This is perplexing because "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful[.]"   *United States v. Ramirez*, 523 U.S. 65, 71 (1998).   The connection between the seizure of Plaintiff's house and the use of force against her son is even more tenuous than the connection between seizure of property and lawful entry onto the same property.

Although Denver complicates the analysis unnecessarily, the Court agrees on a few preliminary matters.   First, Plaintiff's constitutional claim is indeed governed by the Fourth Amendment, which "provides an explicit textual source of constitutional protection" against seizure of Plaintiff's home.   *Graham*, 490 U.S. at 395.   There can be no dispute that burning Plaintiff's home effected a seizure by "meaningful[ly] interfer[ing] with [her] possessory interest" in it.   *United States v. Jacobson*, 466 U.S. 109, 113 (1984).   Second, the Court agrees that whether a constitutional violation occurred turns on the "reasonableness" of the Individual Defendants' conduct.   The Court diverges, however, from Denver's view that this is question the Court can decide.

"Where there are disputed issues of material fact, the question of reasonableness underlying a Fourth Amendment violation is for the jury."   *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1253 (10th Cir. 2013).   Plaintiff points to several facts in the record tending to show the Individual Defendants acted unreasonably, including electing to use CS cannisters inside her home despite the known risk that they

8

would cause a fire (ECF No. 110 at 5–8) and throwing a CS cannister through the bedroom window despite not being able to see where it would land (*id.* at 6). It could well be that the trier of fact may find these actions were reasonable given the serious nature of the ongoing standoff with Plaintiff's son. But the Tenth Circuit has spoken clearly that resolving this question is for the jury.

      b. *Fourteenth Amendment: Shocking the Conscious*

  Denver argues the Fourth Amendment is Plaintiff's exclusive means of recovery. (ECF No.107 at 25.) In the alternative, it argues that even if the Fourteenth Amendment is an available means of recovery, the Individual Defendants' conduct does not shock the conscious. (*Id.* at 26–27.) The parties agree the destruction of Plaintiff's house was a "seizure." (*See* ECF No. 107 at 18–24; ECF No. 110 at 13–14.) "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. at 395.

      c. *Ratification*

  Denver argues there are insufficient facts to sustain Plaintiff's ratification theory. (ECF No. 107 at 28.) With respect to former Police Chief Paul Pazen,[4] Denver argues statements he made after the events that led to the destruction of Plaintiff's home cannot form the basis for municipal liability under a ratification theory. (*Id.* (citing *Bryson v. City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010).) With respect to Plaintiff's assertions regarding "Metro Command," Denver argues the record shows that

---

[4] Pazen is no longer a defendant in this action. (*See* ECF No. 91.)

the response to the barricade situation was formulated by Dodge and non-defendant

Commander Patrick Phelan, neither of whom is a final decisionmaker under *Pembauer*

*v. City of Cincinnati*, 475 U.S. 469, 485 (1986).

Plaintiff's response to these arguments is woefully insufficient.   Rather than

recognizing ratification as a separate theory for imposing municipal liability, she

suggests Phelan's "ratification" of Dodge's decisions "solidifies [her] failure to

train/supervise claim."   (ECF No. 110 at 13.)   Beyond this, she argues her ratification

theory can withstand Defendants' Motion because she "made such an allegation" in the

Second Amended Complaint.   (*Id.*)   This action has progressed beyond the stage

where mere allegations are enough.   "To survive summary judgment, a nonmoving

party must set forth specific facts showing that there is a genuine issue for trial as to

those dispositive matters for which [s]he carries the burden of proof."   *Christy v.

Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1233 (10th Cir. 2016) (internal quotation

marks omitted).

Therefore, with respect to Plaintiff's ratification theory, Defendants' Motion is

granted.

d.      *Failure to Train*

Denver argues "there is a dearth of evidence to support any allegation that [the

Individual] Defendants were improperly trained."   (ECF No. 107 at 30.)   Specifically, it

argues "the undisputed facts demonstrate that the [I]ndividual Defendants were trained in all

relevant matters . . . [, including] on the specific procedure to be used when deploying CS

cannisters indoors."   (*Id.*)   Therefore, in Denver's view, "there is no dispute [of] material

fact as to the *sufficiency* of the City's training of its officers."   (*Id.* (emphasis added).)

As for the law, Denver points the Court toward *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997), an excessive-force Fourth Amendment case.   (ECF No. 107 at 29). While Denver cites the four elements *Allen* articulated "[t]o establish a city's liability under 42 U.S.C. § 1983 for inadequate training of police officers in the use of force," the Court finds *Allen*'s more general articulation of the law appropriate for the facts of this action.   (*Id.* (citing *Allen*, 119 F.3d at 839, 841–42.)   "[T]he inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."   *Allen*, 119 F.3d at 841 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

With this standard in mind and given the following facts, the Court finds Plaintiff has presented sufficient facts to present a genuine issue of material fact for the jury to resolve:

- Denver received materials from the manufacturer of the CS cannisters warning against indoor use due to risk of fire (ECF No. 110-8);

- The manufacturer's materials do not have any exceptions to the warning against indoor use or provide instructions for indoor use with burn boxes or other accessories or modifications (*id.*);

- Dodge states in his declaration attached to Defendants' Motion that he was "trained on how to properly use chemical munitions in barricade settings," and his "plan directives, and actions . . . were consistent with that training" (ECF No. 107-1 ¶¶ 58–59);

- DPD SWAT Technician Adam Giggey states in his declaration that burn boxes are used "throughout the region . . . when deploying CS grenades within a structure" (ECF No. 107-4 ¶ 4);

11

- Denver was unable to locate during discovery any "documents, communications, training materials, training curricula, operations manuals, department policies, or department handbooks that describe how DPD officers are required to deploy fire-producing and non-flammable chemical munitions inside of homes" (ECF No. 110-1 at 4–5); and

- DPD Lt. Pine had to explain the construction and use of burn boxes to Denver Fire Department Investigator Scott Renter and Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent and Certified Fire Investigator Bryan Kempa (ECF No. 110-2 at 3).

It is true these facts are susceptible to multiple interpretations. On the one hand, they may support a finding that the Individual Defendants followed training that instructed them to use the CS cannisters in an improper manner, coupled with a deliberate indifference to the risk that this improper use would likely burn down a citizen's home. On the other hand, they may support a finding that the Individual Defendants' training was appropriate and resulted in cautious application of commonly used techniques that mitigated the risk of fire.

The parties' divergent views on fire investigators' unfamiliarity with burn boxes in particular demonstrates that summary judgment is on Plaintiff's failure-to-train theory is inappropriate. This fact alone could suggest, as Defendant argues, that burn boxes make the use of CS cannisters indoors safe and fires exceedingly rare. (*See* ECF No. 112 at 2.) But it could also suggest that the practice of using burn boxes made from repurposed metal ammunition cans is extraordinarily reckless and far outside the realm

of practical solutions a fire expert would consider or suggest.   (*See* ECF 110 at 13.)

Accordingly, with respect to Plaintiff's failure-to-train theory, Defendants' Motion

is denied.

### B.    Plaintiff's Motion

Plaintiff's Motion seeks summary judgment on only the negligence claims.   (ECF

No. 108 at 6–10.)   In her briefing, Plaintiff makes essentially identical arguments as she

does in her response to Defendants' Motion.   (*See generally id.*)   Because the Court

has already determined there are genuine issues of material fact that the jury must

determine with respect to her negligence claims, *see supra* Part III.A.1, Plaintiff's Motion

is denied.

## IV. CONCLUSION

For the reasons set for above, the Court ORDERS as follows:

1.    Defendants Motion for Summary Judgment (ECF No. 107) is

GRANTED IN PART and DENIED IN PART, as set forth above;

2.    Plaintiff's Motion for Partial Summary Judgment (ECF No. 108) is

DENIED; and

3.    This case REMAINS SET for a Final Trial Preparation Conference

on **April 13, 2023, at 2:00 p.m.** and a four-day jury trial beginning

on **May 1, 2023, at 8:30 a.m.**

Dated this 3rd day of April, 2023.

BY THE COURT:

William J. Martinez
Senior United States District Judge